**EMPLOYERS MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Cecil R. KIRKLAND et ux., Appellees.**

**No. 5106.**

Court of Civil Appeals of Texas, Waco.

May 11, 1972.

Rehearing Denied June 1, 1972.

Sheehy, Cureton, Westbrook, Lovelace & Nielsen, Dan E. Mayfield, Jr., Waco, for appellant.

Andrew Campbell, James E. Crouch, Hamilton, for appellees.

## OPINION

JAMES, Justice.

This is an uninsured motorist case involving two main problems: (1) The sufficiency of plaintiffs' proof that the alleged tort-feasor (driver of the other car) was uninsured, and (2) the factual sufficiency of the evidence to support certain jury findings of primary and contributory negligence.

Appellees-Plaintiffs Cecil R. Kirkland and wife Barbara Kirkland had an automobile liability insurance policy with Appellant-Defendant Employers Mutual Casualty Company which included uninsured motorist coverage. The Kirklands had a sixteen year old son, Leslie Kirkland, who was killed in a head-on automobile collision with a car driven by one Glenn Smith on March 25, 1970, in the city of Hamilton, Texas. The Kirklands filed suit against

their insurer, Employers, on June 15, 1970, in Hamilton County, Texas, to recover under the uninsured motorist coverage of their policy, alleging that Glenn Smith was an uninsured motorist.

Thereafter, on February 18, 1971, Employers filed a Cross-action or Third Party Action against Glenn Smith for indemnification; pursuant to which Glenn Smith employed an Attorney, Hon. Bobby L. Cummings, of Gatesville, Texas, who filed an answer to the Cross-action, in behalf of Glenn Smith on March 15, 1971.

Then on June 12, 1971, Glenn Smith died as result of a subsequent unrelated automobile accident, and a Suggestion of Death was filed by his Attorney Mr. Cummings on June 28, 1971; however, no order was entered by the court substituting any party or parties in lieu of the deceased.

On August 4, 1971, (which was after Glenn Smith's death) the Kirklands served Requests for Admissions upon Mr. Cummings as Glenn Smith's Attorney under Rule 169, Texas Rules of Civil Procedure, as follows:

(1) That on the evening of March 25, 1970, Glenn Smith was the driver of a motor vehicle that was in collision with another motor vehicle operated by Leslie Kirkland.

(2) That such collision took place on South Loyd Street in Hamilton, Texas.

(3) That at the time of such collision, no policy of bodily liability insurance or bodily liability bond was effective with respect to the person or organization legally responsible for the use of the automobile operated by Glenn Smith.

(4) That at the time of such collision, no policy of bodily liability insurance or bodily liability bond was effective with respect to the said Glenn Smith while he was operating a nonowned automobile.

On August 9, 1971, Mr. Cummings filed an answer to these Requests for Admissions, admitting each of the four requests, and signing same as "Attorney for the Estate of Glenn Smith, Deceased."

Subsequently on August 20, 1971, Employers took a nonsuit against Cross-Defendant Glenn Smith and on that same day the court entered an order permitting the nonsuit and dismissing Glenn Smith out of the suit. This left the Kirklands as sole Plaintiffs and Employers as the sole Defendant; and on August 23, 1971, trial was had to a jury which found in answer to the Special Issues numbered as follows: (1) That Glenn Smith was operating his motor vehicle in the left-hand lane of traffic, (2) that this was negligence, and (3) that this was a proximate cause of the collision; (4) that Glenn Smith failed to turn his vehicle to his right to avoid the collision; (5) that this was negligence and (6) this was a proximate cause of the collision; (7) that Glenn Smith failed to timely apply his brakes; (8) that this was negligence; and (9) a proximate cause of the collision; (10) that Glenn Smith failed to keep a proper lookout; and (11) this was a proximate cause of the collision; (12) that $10,000.00 would fairly and reasonably compensate the Kirklands for past and future losses of their son's net earnings and contributions; and (13) that $1,642.28 would compensate the Kirklands for funeral and burial expenses; (14) the jury did not find that Leslie Kirkland was operating his motor vehicle in the left-hand lane of traffic; (15) no answer on this negligence issue since it was conditioned on an affirmative finding to No. 14, and (16) no answer on this proximate cause issue since it was based on an affirmative finding to No. 15; (17) that Leslie Kirkland failed to turn his motor vehicle to his right to avoid the collision, but (18) did not find that this was negligence; with (19) no answer on the proximate cause issue since it was conditioned on an affirmative finding to No. 18; (20) that Leslie Kirkland failed to apply his brakes in time to prevent the collision, but (21) did not find that this was negligence and (22) no answer to the proximate cause issue since it was conditioned on an affirmative finding to No. 21;

(23) the jury did not find that Leslie Kirkland failed to keep a proper lookout, with (24) no answer to this proximate cause issue; and finally (25) that this collision was not the result of an unavoidable accident.

In the trial the Kirklands offered in evidence the above-enumerated Requests for Admissions together with the Answers thereto, which were admitted into evidence by the trial court over the objection made by Employers. No other proof of the uninsured status of Glenn Smith was made by the Kirklands, and no proof concerning this point was offered by Employers.

Pursuant to the jury verdict the trial court entered judgment in favor of the Kirklands against Employers for $10,000.-00, this being the maximum coverage provided under the subject insurance policy for uninsured motorist protection.

Appellant-Defendant Employers attack the trial court's judgment on thirteen points of error which may be conveniently consolidated into two main thrusts as follows:

(1) That there was no competent evidence that Glenn Smith was an uninsured motorist, because the Request for Admissions and Answers thereto (as above outlined) were hearsay as to Employers. (Points one through five).

(2) That the jury's answers to Special Issues Nos. 1, 4, 7, 10, 14, 18, 21, and 23 (as hereinabove enumerated) are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. (Points six through thirteen).

We overrule these contentions and affirm the judgment of the trial court.

■ With reference to Appellant's first group of points, that is, that the Kirklands as claimants failed to meet their burden of proving Glenn Smith an uninsured motorist, our Supreme Court in State Farm Mutual Automobile Insurance Co. v. Matlock

(Sup.Ct.1970) 462 S.W.2d 277 has laid down the applicable test which the Kirklands are required to meet. Quoting with approval from a New York decision, the Court says:

"Since the absence of insurance upon the offending vehicle and its driver is a condition precedent to the applicability of the uninsured driver endorsement, we hold that the burden of proving such absence is upon the claimant. However, we must keep in mind that proving a negative is always difficult and frequently impossible and that, consequently, the quantum of proof must merely be such as will convince the trier of the facts that *all reasonable efforts have been made to ascertain the existence of an applicable policy and that such efforts have proven fruitless.* In such an event, and absent any affirmative proof by petitioner (the insurance company), the inference may be drawn that there is in fact no insurance policy in force which is applicable." (Emphasis added).

The Matlocks suffered injuries in an accident with a car driven by a man identified in this record only as a man with one leg. They knew the name of this man, but did not testify about his name. Plaintiffs did not prove the make, model, or license number of the other vehicle, and this information was easily available. Upon the theory that the driver of the other car was an uninsured motorist and without joining him as a defendant, the Matlocks filed a direct action against their own insurer, State Farm, and asserted its liability under its policy terms to cover the Matlocks for damages for bodily injury caused by an uninsured motorist. The only proof that the one-legged operator was an uninsured motorist was by Mr. Matlock who testified that a recording agent (for State Farm) said that he (recording agent) had checked with the one-legged man, "and he didn't have any type of insurance."

The Matlocks were awarded judgment against State Farm by the trial court, which was affirmed by the Court of Civil Appeals. The Supreme Court applied the

test hereinabove stated and reversed and rendered the judgments of the trial court and Court of Civil Appeals. The recording agent was held to be unauthorized to bind State Farm, and the Supreme Court took the position that the Matlocks did not make "all reasonable efforts" to ascertain the existence of an applicable insurance policy. The one-legged motorist was alive and his identity was known, and apparently without much additional effort the Matlocks could have produced direct proof that the motorist was uninsured.

Likewise in Members Mutual Insurance Co. v. Tapp (Sup.Ct.1971), 469 S.W.2d 792, our Supreme Court reversed (and remanded) a trial court judgment which had been affirmed by the Court of Civil Appeals. Here the claimant, Mrs. Tapp driving her car had been rear-ended by a car driven by one Seale who was an alleged uninsured motorist. Mrs. Tapp sued her insurer, Members Mutual, for personal injuries. Mrs. Tapp's proof that Seale was an uninsured motorist was basically from two sources: (1) At the scene immediately after the collision Seale came up to her and told her, among other things, that he had no insurance coverage, and (2) A letter from the State Department of Public Safety to the effect that Seale had not submitted insurance information or made proof of financial responsibility. However, a policy report of the accident which was in evidence showed that Mrs. Tapp knew Seale's full name, address, and description, as well as the description and license number of Seale's car. The Supreme Court reversed and remanded the judgments (which were in favor of Mrs. Tapp) of the trial court and Court of Civil Appeals, for the reason that Mrs. Tapp had failed to meet her burden of proof to prove that Seale was an uninsured motorist. The Court in effect said that Mrs. Tapp probably could with minimum effort have produced direct evidence that Seale was uninsured; at least, she failed to show that such efforts would have been fruitless.

So in both *Matlock* and *Tapp* the offending driver was alive and in each instance probably available to testify as to his uninsured status, or at least was subject to discovery processes. Our Supreme Court in its above-quoted rule takes into account the difficulties involved in proving a negative, that is, the absence of insurance; but at the same time expects the claimant to at least exercise reasonable diligence in securing and making proof of the offending driver's non-insured status.

In the case at bar, we are concerned with this specific problem: Did the Kirklands as claimants make "all reasonable efforts to ascertain the existence of an applicable policy" that Glenn Smith may have had in effect at the time of the collision? We believe that they did. In the first place, when Glenn Smith was made a party to the suit by the Third-Party Cross-action of Employers, he hired his own personal lawyer (as opposed to one furnished by an insurance company) to file an answer for him and to represent him. It is a reasonable inference that a motorist was not insured when he employs an attorney to defend him in litigation resulting from an automobile accident. Glenn Smith was a young man who lived in Hamilton, Texas, and attended high school there and worked in the afternoons after school for a Mr. Walter Anglin on his farm, assisting Mr. Anglin in a hog-raising business. Glenn Smith was an able-bodied young man who did not suffer any substantial injury in his accident with Leslie Kirkland of March 25, 1970. No one had reason to expect Glenn Smith to die; however, he did die on June 12, 1971, of injuries caused in an unrelated automobile accident, about two and a half months before the case at bar went to trial (August 23, 1971). We cannot accuse the Kirklands of want of diligence because they failed to take Glenn Smith's deposition, since it was reasonable for them to assume that he would be subject to subpoena processes prior to trial. But since Glenn Smith met an untimely

and unforeseen death, and his testimony was not available at the time of trial, the Kirklands sought out and obtained the best remaining source of information concerning his non-insured status, to wit, the Attorney who had been employed by Glenn Smith to represent him in this particular automobile accident. It may be reasonably inferred that Glenn Smith's Attorney under these circumstances would make it his business to know whether his client had insurance before accepting employment.

Then when Smith's Attorney was served with the Requests for Admissions (after Smith's death), his answers were unequivocal that his client was uninsured. If for any reason there had been any doubt in his mind that Smith may have been insured, it would certainly have been to his and his deceased client's best interests to have answered that he could neither admit or deny that his client was uninsured. But this he did not do. His answers were simply that Glenn Smith and the car he was driving on the occasion were uninsured. We believe under the state of this record that the Kirklands did exercise "all reasonable efforts to ascertain the existence of an applicable policy" and have thereby met their burden of proof that Glenn Smith was uninsured. We therefore overrule Appellant's points one through five inclusive.

We next proceed to Appellant's points six through thirteen, wherein Appellant contends that the jury's answers to Special Issues 1, 4, 7, 10, 14, 18, 21, and 23 are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We have detailed the jury's answers to these issues hereinabove in this opinion and will not repeat them here. After carefully examining the entire record we find the evidence to support the jury's answers to these issues to be factually sufficient, and therefore overrule these contentions.

The judgment of the trial court is affirmed.

Affirmed.